IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

WILLIAM DUNHAM                                                  PLAINTIFF

V.                                               CIVIL ACTION NO. 2:07cv171-MTP

CHRISTOPHER EPPS, et al.                                      DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the court on the Motions for Summary Judgment [42][44] filed by the Defendants. Having reviewed the submissions of the parties and the applicable law, the court finds that the Motions [42][44] should be granted and that this action should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff William Dunham, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on August 20, 2007. Plaintiff's claims arose while he was an inmate in the South Mississippi Correctional Institution ("SMCI"), serving an eight-year sentence after having been convicted of aggravated assault in Hinds County. Plaintiff has apparently been released from prison. *See* Notice of Change of Address [49].

Through his complaint and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendants Dr. Jerry Hardy, Christopher Epps (in his official capacity only), and Wexford Health Sources, Inc. ("Wexford") for the denial and/or delay of adequate medical treatment in violation of the Eight Amendment. He also alleges a claim against Defendant

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on January 22, 2009. *See* Transcript [40].

1

Christopher Epps (in his official capacity only) for violation of his due process rights.[2] Plaintiff seeks compensatory and punitive damages. He also seeks the following injunctive relief: treatment for his gum infection and an order compelling the Mississippi Department of Corrections ("MDOC") to change its dental policy.

On April 30, 2009, the Defendants filed their Motions for Summary Judgment [42][44]. Plaintiff filed his Response [48] in opposition to the Wexford Defendants' Motion [42] on or about July 13, 2009, but failed to respond to Christopher Epps's Motion [44], despite an Order [47] from the court directing him to do so.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

---

[2]Plaintiff also named Ron King, April Meggs, and Larry Hardy as Defendants in this matter. These Defendants were dismissed by Order [37] dated January 26, 2009.

2

902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there

3

is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**Denial of Adequate Medical Care**

Plaintiff alleges claims against Defendants Dr. Jerry Hardy, Wexford, and Christopher Epps (in his official capacity only), for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment. Specifically, Plaintiff alleges that Defendants failed to provide him with proper dental treatment. Plaintiff claims he had a gum infection when he arrived at SMCI in May 2005, but "instead of clearing up the infection, the dentist just [kept] pulling teeth." Complaint [1] at 4. He alleges he complained to the dentists, the assistant warden, and filed requests through the prison's Administrative Remedy Program ("ARP"), but was not given the relief he requested.

Plaintiff claims that had he been properly treated in 2005 for his gum disease, his condition would not be so advanced. He further claims that SMCI has an "unwritten" policy of

4

only allowing inmates to see the dentist for emergencies.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).

Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

*Dr. Jerry Hardy*

Plaintiff alleges that Defendant Dr. Jerry Hardy, a dentist at SMCI employed by Wexford, failed to provide him with proper dental treatment. Specifically, Plaintiff claims that Dr. Hardy failed to properly treat him for his gum infection and instead just kept pulling his teeth.

The record reflects that Plaintiff was taken into MDOC custody at the Central Mississippi Correctional Facility ("CMCF") in April 2005. The dental intake assessment dated April 11, 2005, indicated heavy plaque and calculus and a dental classification of III. Plaintiff was missing seven (7) teeth, and had at least one non-restorable tooth. Plaintiff's periodontal diagnosis was gingivitis and chronic periodontitis.[3] *See* Ex. C to Motion [43] at Dunham 9, 15; Ex. D.

Plaintiff submitted a sick call request on April 12, 2005, complaining that he had a few loose teeth and one with a bad hole in it. *See* Ex. C to Motion [43] at Dunham 110. Plaintiff was seen by Dr. Jason Grissom on April 25, 2005, and one tooth was extracted due to advanced periodontal disease. *See* Ex. C to Motion [43] at Dunham 9, 19, 110; Ex. D. Plaintiff was transferred to SMCI in late April or early May of 2005. Transcript [40] at 7-8; Ex. C to Motion [43] at Dunham 111, 112, 153.

---

[3]Plaintiff claims that his initial diagnosis was gingivitis, and that Dr. Hardy changed the diagnosis to chronic periodontitis on October 6, 2006. *See* Response [48]. As set forth below, this dispute does not create a genuine issue of material fact as to whether Dr. Hardy was deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff submitted a sick call request on May 3, 2005, complaining that all of his teeth were getting loose and that his mouth hurt constantly. Plaintiff was seen by Dr. Griffin on May 31, 2005; Dr. Griffin noted severe decay in tooth #10, and recommended that Plaintiff either have the tooth extracted or filled and crowned. Plaintiff opted to have the tooth extracted. Dr. Griffins's plan for Plaintiff was "perio therapy and partials." *See* Ex. C to Motion [43] at Dunham 10-11, 109; Ex. D.

On April 22, 2006, Plaintiff had tooth #13 extracted and was given Ibuprofen for pain. *See* Ex. C to Motion [43] at Dunham 10; Ex. D. On May 1, 2006, Plaintiff refused dental treatment, stating that he went to the dentist last week, and that he did not put in another sick call request and did not want to be charged for something that he did not need. *See* Ex. C to Motion [43] at Dunham 10, 54; Ex. D. Plaintiff submitted a sick call request on May 29, 2006, complaining of a "bad infection" in his gums. Plaintiff was seen in the clinic by medical staff on May 30, 2006, and the staff noted that Plaintiff had swelling to his right cheek and two grossly decayed right upper molars. The staff noted that the dentist would be unable to see Plaintiff until June 2, 2006. He was given Ibuprofen for pain control. *See* Ex. C to Motion [43] at Dunham 102-03; Ex. D. Plaintiff was seen by a dentist on June 9, 2006. He elected to have his teeth cleaned rather than having the decayed tooth extracted. *See* Ex. C to Motion [43] at Dunham 10, 103; Ex. D.[4]

Plaintiff submitted a sick call request on September 27, 2006, complaining of a gum infection and loose teeth. On October 6, 2006, Defendant Dr. Hardy treated Plaintiff–this was

---

[4] Plaintiff claims that this cleaning was never performed. *See* Response [48]. However, he does state that on May 14, 2007, Dr. Hardy scraped the back of a few of his teeth with a pick. *Id.* at 6.

his first time to personally treat Plaintiff. Dr. Hardy's assessment was non-restorable advanced chronic periodontitis. Plaintiff signed a surgical consent, and Dr. Hardy extracted six teeth. Plaintiff was given Ibuprofen for pain. *See* Ex. C to Motion [43] at Dunham 10, 53, 94, 124; Ex. D.

Plaintiff submitted a sick call request on February 22, 2007, requesting a partial denture plate and stating that is was difficult to eat with missing teeth. He claims he first requested a partial plate on October 6, 2006. On April 27, 2007, Plaintiff saw Dr. Hardy, who noted that Plaintiff had recurrent decay of four other teeth, heavy plaque and calculus. Dr. Hardy noted that "operative/ext needed prior to RPDs."[5] He further noted that Plaintiff became angry and left the clinic. *See* Ex. C to Motion [43] at Dunham 8, 87; Ex. D.

On April 30, 2007, Plaintiff submitted a sick call request stating that he was told he needed another tooth extracted before he could receive his partial dental plate. On May 14, 2007, Dr. Hardy completed a non-surgical periodontal debridement[6] of Plaintiff's teeth. *See* Ex. C to Motion [43] at Dunham 8, 52, 86; Ex. D.

On or about August 2, 2007, Plaintiff submitted a sick call request seeking a partial denture plate and stating that he still had the gum infection. *See* Ex. C to Motion [43] at Dunham 47. Plaintiff saw Dr. Hardy on February 1, 2008; Dr. Hardy completed the pre-certification for

---

[5]"RPD's" is presumably an abbreviation for partial dentures.

[6]Periodontal is defined as "pertaining to or occurring around a tooth." *Dorland's Illustrated Medical Dictionary* 1355 (29th ed.). Debridement is defined as "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed." *Dorland's Illustrated Medical Dictionary* 460 (29th ed.); *See also* http://www.colgate.com/app/Colgate/US/OC/Information/ OralHealthBasics/CommonConcerns/PlaqueTartar/Debridement.cvsp ("Debridement is the removal of excessive amounts of plaque and tartar from your teeth.").

dentures indicating that Plaintiff was qualified for dentures. On this assessment, Dr. Hardy noted that Plaintiff had multiple missing teeth due to advance periodontitis. Plaintiff was examined and given his dentures on March 12, 2008. *See* Ex. C to Motion [43] at Dunham 12, 46-48; Ex. D.

> In his sworn affidavit, Dr. Hardy states:
>
> Mr. Dunham's dental problems were due to advanced periodontitis which required multiple extractions. Advanced periodontitis is a chronic gum disease that spread below the gums to damage the tissues and bone that support the teeth. Periodontitis is a major cause of tooth loss in adults. Mr. Dunham had periodontitis when he came to SMCI in April, 2005.

*See* Ex. D to Motion [43]. Dr. Hardy also stated that based on his personal knowledge, training, experience and familiarity with the applicable standard of care, Plaintiff received proper treatment for his dental conditions. *Id.*

The record reflects that Plaintiff was treated each time he submitted a sick call request for his dental problems. Plaintiff's disagreement with Dr. Hardy's treatment of his dental infection does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292. Moreover, even assuming Dr. Hardy was negligent in his treatment of Plaintiff's dental condition, this does not establish an Eighth Amendment violation. *See Davidson v. Tex. Dep't of Criminal Justice*, 91 Fed. Appx. 963, 965 (5th Cir. 2004) (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999)) ("Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983."); *Bennett v. Louisiana ex rel. Dep't Of Pub. Safety and Corr.*, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009) (affirming dismissal of plaintiff's wrongful death claim against prison officials, reasoning "[w]hile the Appellees may very well have exercised poor medical judgment in not performing additional tests on [the deceased prisoner], [plaintiff] has not shown that their actions rise to the

level of deliberate indifference"); *see also McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) (holding that prisoners are not entitled to the "best" medical treatment available).

The record reflects that Plaintiff requested a partial dental plate in February of 2007, although he claims he first requested the partial plate in October of 2006. However, as set forth above, when Plaintiff saw Dr. Hardy on April 27, 2007, Dr. Hardy advised him that he would need further dental work before being fitted for a partial plate, which he initially refused. On May 14, 2007, Dr. Hardy completed a non-surgical periodontal debridement of Plaintiff's teeth. Plaintiff submitted another sick call request on August 2, 2007, requesting a partial plate. Dr. Hardy completed the pre-certification for Plaintiff's dentures on February 1, 2008, and Plaintiff received his dentures on May 12, 2008. While there was two-month delay (and arguably a four-month delay) before Plaintiff was seen by Dr. Hardy after requesting dentures in February 2007, the record reflects that Plaintiff needed additional dental work before he could be fitted for dentures. After the dental work was performed in May 2007, there was an approximate eight to nine-month delay before Plaintiff was fitted for and received dentures. Such delay does not establish deliberate indifference by Dr. Hardy, especially considering that Plaintiff's mouth needed to heal from the last procedure before he could be fitted for dentures.

Moreover, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff has failed to establish that the delay in treatment or in providing him with dentures resulted in substantial harm. Plaintiff did not loose any teeth since his extractions in October 2006. In his sick call request dated February 21, 2007, Plaintiff claims "it is not easy eating without teeth." *See* Ex. C to Motion [43] at Dunham 87. However, he does not allege that he was unable to eat or that he lost any weight or suffered any other

10

substantial harm as a result of the delay in receiving the partial plate.[7] *See Greenlaw v. Hill*, Civil No. 05-1448-BR, 2007 WL 1876515, at *3 (D. Or. Jun. 27, 2007) (holding that 16- month delay in receiving dentures did not constitute an Eighth Amendment violation); *see also Miles v. Daniels*, No. Civ. 03-1580-JE, 2005 WL 708422, at *2 (D. Or. Mar. 28, 2005); *Whitely v. Russo*, No. G-03-555, 2006 WL 2434445, at *4 (S.D. Tex. Aug. 21, 2006) (holding that plaintiff failed to show defendants were deliberately indifferent to his serious medical needs, reasoning in part "Plaintiff has failed to show he suffered any illness or harm, beyond discomfort, because he did not have dentures").

Plaintiff's opposition [48] fails to establish any genuine issues of material fact regarding his claims for deliberate indifference against Dr. Hardy.[8] Instead, it reflects his disagreement with the treatment he received. Accordingly, Dr. Hardy is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

---

[7]Plaintiff saw Dr. Hardy in April 2007, but stormed out of the clinic when Dr. Hardy informed him he needed additional work. Further, one of Plaintiff's sick call requests states that he was unable to eat for two days because his mouth hurt so bad; however, this request (dated May 29, 2006) pre-dates Plaintiff's first visit with Dr. Hardy (October 6, 2006). *See* Ex. C to Motion [43] at Dunham 103; Ex. D.

[8]Plaintiff does correctly note that his initial physical assessment dated April 11, 2005 indicates that the condition of his teeth and gums are "good" and "healthy." *See* Attachment [48-2] at 1. However, this was clearly a mistake or oversight, since all other documentation establishes the very opposite. Plaintiff's dental screening dated the very same day indicates that Plaintiff was missing seven teeth when he arrived at CMCF and had gingivitis and chronic periodontitis. *See* Ex. C to Motion [43] at Dunham 9, 15. Plaintiff cannot genuinely claim that his teeth and gums were healthy when he submitted a sick call request the very next day, April 12, 2005, stating that a few of his teeth were "giving him trouble" and that one had a "bad whole (sic) in it," and submitted another sick call request less than a month later stating that all of his teeth were really loose and his mouth hurt constantly. *See* Ex. C to Motion [43] at Dunham 109-110. Moreover, Plaintiff's initial screening form dated May 2, 2005, completed upon his arrival at SMCI notes that Plaintiff complained that his bottom teeth were coming loose. *Id.* at 112. All of this occurred before Plaintiff ever saw Dr. Hardy.

*Wexford*

Plaintiff claims he sued Wexford "because they are the ones contracted with MDOC to provide health care." Transcript [40] at 22. He further alleges that Wexford allowed its employees at SMCI to disregard his medical needs and has assumed responsibility for those employees. Response [9] at 7.

As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6; *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06 (1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of respondeat superior). Accordingly, Wexford cannot be held liable for the actions and/or inactions of Dr. Hardy, or any other Wexford employee. Further, Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir. 1992). The records reflect that Plaintiff was consistently treated for his dental problems. *See* Exs. C and D to Response [43]. Plaintiff's disagreement with the medical treatment he received does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available).

Plaintiff's opposition [48] fails to establish any genuine issues of material fact regarding his claims for deliberate indifference against Wexford. Accordingly, Wexford is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

*Christopher Epps*

Plaintiff alleges a claim against Christopher Epps (in his official capacity only) for the

denial and/or delay of adequate medical treatment in violation of the Eight Amendment.[9] Plaintiff apparently seeks to hold Commissioner Epps responsible for the actions of his employees for failing to ensure he received adequate medical treatment.

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver,* 276 F.3d at 742 & n.6; *see also Thompkins*, 828 F.2d at 304. Thus, in order to be liable, a prison official must either be personally involved in the acts that caused the constitutional deprivation, or must "implement a policy so deficient that the policy itself" acts as a deprivation of constitutional rights. *Thompkins*, 828 F.2d at 304 (citations and quotations omitted).

Plaintiff conceded during his *Spears* hearing that Commissioner Epps had no personal involvement in his medical treatment. Transcript [40] at 16-18. Indeed, the only alleged involvement by Commissioner Epps was his failure to timely answer Plaintiff's ARP request. *Id.* Moreover, Plaintiff has failed to allege, must less establish, an unconstitutional policy implemented by Commissioner Epps. *See Thompkins*, 828 F.2d at 304. Instead, Plaintiff claims "Mr. Epps is the commissioner . . . [and] is supposed to be the one in charge of the people that he has working at this facility . . . ." *Id.* at 17.

Plaintiff failed to rebut any of Commissioner Epps's arguments; indeed, he failed to respond to the Motion [44], despite an Order [47] from the court directing him to do so. Accordingly, Christopher Epps is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked

---

[9]*See* Scheduling and Case Management Order [37].

medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (holding that supervisory officials are entitled to rely on expertise of, and medical judgments made by, prison physicians with respect to inmates' medical treatment); *see also Poullard v. Blanco*, No. Civ.A. 05-1019-P, 2006 WL 1675218, at * 5 (W.D. La. June 9, 2006) (dismissing claim of failure to provide adequate medical care against supervisory officials who "acted consistent with their roles in the prison administration by addressing plaintiff's grievance or referring him to an avenue by which he might obtain relief").

**Denial of Due Process**

Plaintiff alleges a claim against Defendant Christopher Epps (in his official capacity only) for violation of his due process rights. Specifically, Plaintiff claims that his due process rights were violated because the ARP process took longer than 90 days after he filled out his request regarding his medical treatment. He states that it is MDOC policy for the grievance to be resolved within 90 days of filing. Plaintiff further claims that a copy of his ARP request was sent to Commissioner Epps on March 19, 2007, after his second step was never answered. He claims Commissioner Epps failed to comply with his own department's policies and procedures by failing to timely answer the request. *See* Complaint [1], Response [9], and Transcript [40].

Even if Commissioner Epps did violate MDOC policies and procedures, such conduct fails to rise to the level of a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation)*; McGowan v. Peel*, No. 3:06cv659-DPJ-JCS, 2007 WL 710154, at *1-*2 (S.D. Miss. March 6, 2007). Moreover, Plaintiff does not have a constitutional right to a grievance procedure, and has no due process

liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007).

Plaintiff failed to rebut any of Commissioner Epps's arguments on this claim, as he failed to even respond to the Motion [44]. Accordingly, Commissioner Epps is entitled to judgment as a matter of law on Plaintiff's due process claims.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [42][44] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That Defendants' Motions for Summary Judgment [42][44] are GRANTED and this action is dismissed with prejudice.

2. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 31st day of July, 2009.

s/ Michael T. Parker
United States Magistrate Judge